**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**SOUTHERN  DIVISION**

| | | |
|---|---|---|
| **RICHELLE JOHNSON** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| vs. | § | |
| | § | |
| | § | |
| **UTMB  HEALTHCARE  SYSTEMS,** | § | **CIVIL ACTION NO._____** |
| **INC.;** aka **UTMB (UNIVERSITY OF** | § | |
| **TEXAS   MEDICAL   BRANCH   AT** | § | **(Jury Trial Demanded)** |
| **GALVESTON** | § | |
| | § | |
| **DEFENDANT** | § | |

---

### PLAINTIFF'S ORIGINAL COMPLAINT

---

**TO THE HONORABLES UNITED STATES DISTRICT COURT:**

**NOW   COMES,**   RICHELLE  JOHNSON  (hereinafter  referred  to  as  "Plaintiff"  or

"Richelle"),  filing  this  Original  Complaint  of  UTMB  HEALTH  CARE  SYSTEMS,  INC.;  aka

UTMB  (UNIVERSITY  OF  TEXAS  MEDICAL  BRANCH);  dba  UNIVERSITY  OF  TEXAS

MEDICAL  BRANCH  AT  GALVESTON ,and  for  cause  of  action  would  respectfully  show  the

Court as follows:

### I.  NATURE OF ACTION

1.     The  action  is  brought  to  remedy  discrimination  on  the  basis  of  disability  in  the  terms,

conditions and privileges of employment, including the right to be reasonably accommodated, protected by Americans with Disabilities Act, As Amended.

## II.  JURISDICTION

2.    This Court has jurisdiction over this case pursuant to 28 U.S.C §§ 1331 (federal question) and 1343 (civil rights).

3.    The venue of  this action is properly placed in the United States District  Court for the Southern District of Texas because the alleged unlawful employment practices were committed in this district. Plaintiff was an employee of the City of  Galveston ,Texas which is located in this district.

## III. EXHAUSTION OF  ADMINISTRATIVE REMEDIES

4.    On June 15, 2020, Plaintiff timely filed a charge of  discrimination against Defendant, University of Texas Medical Branch    with the Equal Employment Opportunity Commission (EEOC), a copy of which is attached hereto as "*Exhibit A*". On 2020, the EEOC issued to Plaintiff a notice of right to sue on her first charge of dicrimination and Plaintiff files this complaint within 90 days after receiving said notice. A copy of the notice of the right to sue is attached hereto  as "*Exhibit B*".

## IV.  PARTIES

5.    Plaintiff is a resident of Galveston  County, Texas.

6.    Defendant University of Texas Medical Branch is a governmental entity with a broad range of responsibilities with regard to medicine, science and education located in Galveston, Texas. Defendant conducted business in Galveston County at 301 University

2

Blvd,  Galveston Texas 77555.  Defendant can be served through its registered agent, Maria L. Gonzalez, at 301 University Blvd, RT 0985, Galveston, TX 77550.

## V.  STATEMENT OF CLAIMS

7.  **Employee**. Plaintiff suffered from a "disability" and was regarded, perceived, or actually had a disability as a result of her Multiple Sclerosis illness.  Plaintiff is a "qualified person with a disability" as those terms are defined in the Americans with Disabilities Act, as amended (hereinafter "ADAAA").  The ADAAA requires that disability be assessed without regard to mitigating measures.  In the instant matter, during Plaintiff's employment with the Defendant she was diagnosed with the disability of Plaintiff's Multiple Sclerosis. Her disability caused her to experience severe episodes of physical pain and mental impairment. Thus, she  was placed on intermittent FMLA.

8.  **Employer**. Defendant is a "covered" "employer" as defined under 42 USC § 12111 (2) and (5) (A) of the ADA.  Defendant is also a "public entity" as defined under 42 USC § 12131 (1) (B) engaged in an industry, which affected commerce, and because it had over the requisite number of employees and administrative employees working for it at all times relevant to this suit.  Defendant took an adverse employment action against Plaintiff when Defendant wrongfully discriminated against Plaintiff and terminated her solely because of her disability.

9.  **Disability**. In 2014, Plaintiff was diagnosed with Multiple Sclerosis and immediately informed her employer of her disability. Plaintiff's disability affects her  central nervous system by disrupting the flow of information within the brain  and between the brain and

body. Plaintiff's illness was debilitating. The gravity of Plaintiff's condition required her to be placed on Intermittent FMLA for Serious Health Condition on October 5, 2019 which was expected to end on October 5, 2020. Plaintiff required the assistance of crutches to move around.

10.    Plaintiff's FMLA provided "leave for up to 3 times per month, 30 days per episode, plus appointments." *See* Exhibit A.

11.    Plaintiff was a "disabled person" as that term is defined under the Texas Commission on Human Rights Act, TEX.REV.CIV.STAT.ANN. art. 5221k, hereinafter "the Texas Human Rights Act." Plaintiff is also a "handicapped person" or a "qualified person with a disability" as those terms are defined in §504 of the Rehabilitation Act of 1974, 29 U.S.C. §794 (hereinafter "§504"), and in the Americans with Disabilities Act, 42 U.S.C. §§12102 and 12131 (hereinafter "ADA").

12.    Defendant is an "employer" as defined in the Texas Commission on Human Rights Act ("TCHRA"), employing more than fifteen "employee(s)," as that term is defined in the TCHRA, during the times relevant to the matters upon which this lawsuit is based.

## VI.  FACTUAL BACKGROUND

13.    On October 1, 2000, Plaintiff was employed as a Health Unit Coordinator with the University of Texas Medical Branch. During Plaintiff's employment, Plaintiff alleges that she was an exemplary employee. In 2014, Plaintiff was diagnosed with Multiple Sclerosis (hereinafter "MS").  Shortly after being diagnosed Plaintiff began experiencing episodes that caused physical pain and mental impairment.  On October 5, 2019, Plaintiff

4

was placed on an intermittent medical leave of absence under the Family Medical Leave Act (FMLA) for Serious Health Condition, "which was expected to end on October 5, 2020." *See* "*Exhibit C*". The FMLA provided "leave for up to 3 times per month, 30 days per episode, plus appointments." *Id*.

14.    Beginning April 7, 2020, Plaintiff's disability culminated in a series of events which required her to seek medical attention. On April 7, 2020, Plaintiff contacted her supervisor to inform her supervisor that she was not feeling well and would be late to work because of a doctor's appointment. Although not required, Plaintiff provided a doctor's note. *See* "*Exhibit D*".

15.    On April 8, 2020, Plaintiff's Multiple Sclerosis affected her health and she became severely sick. Plaintiff sent two text messages to her supervisor Mary Pena, that she was not feeling well and was too ill "to come into work on April 8 and April 9, 2020". *Id*.

16.    Between April 9, 2020 and April 10, 2020, upon information or belief (due to Plaintiff's illness) Plaintiff lost control of her physical and mental functions, and at some point was placed into police custody. *See* "*Exhibit E*". Upon information or belief, on April 9, 2020, Plaintiff was rushed to the ER. Plaintiff has no memory of this occurrence. *Id*.

17.    On April 11, 2020, Plaintiff was again admitted to the hospital because of her Multiple Sclerosis. *See* "*Exhibit F*". Once again on April 13, 2020 Plaintiff was sick and admitted in the hospital because of her Multiple Sclerosis. Upon information or belief, Ms. Pena was informed about Plaintiff's illness and admission into the hospital. *Id*. After Plaintiff obtained the necessary medical treatment Plaintiff was released from the hospital under

doctor's care and was required to remain absent from work until April 17, 2020. Plaintiff's medical documents  and her Return To Work Excuse was provided to Ms. Pena. *See "Exhibit F"*.

18.   On April 16, Plaintiff  visited her  primary care physician and was restricted from returning to work until April 20, 2020. *See "Exhibit G"*. On April 20, 2020, Plaintiff returned to work as normal and inadvertently updated her timesheet incorrectly -- marking the dates she missed due to her illness from April 7-April 19 as "vacation".

19.   Subsequently, on April 21, 2020, Plaintiff received an email from her HR Manager Humaira Baig who instructed her to modify her timesheet that she accidentally coded as a Vacation Day. *See "Exhibit H"*. The instruction  provided by HR was ambiguous. Thus, Plaintiff  contacted  Ms. Pena to obtain clarification.  Ms. Pena informed Plaintiff that she would "check on this... It potentially maybe an unscheduled sick leave or unscheduled vacation, or if [I] don't have  any time leave without pay."  Ms. Pena informed Plaintiff that once she verified the issue, she would conduct a historical edit to correct the April 10, 2020 Vacation Day. *See Id*. Later that same day, Plaintiff asserts that Ms. Pena instructed her to change the April 10, 2020 designation from Vacation Day to Sick Leave. A short time later, Ms. Pena delivered to Plaintiff via email a Notice of Intent to Terminate for "falsification of time records".  *See Id. ; See also "Exhibit I"*.

20.    Furthermore, Plaintiff alleges that the *Notice of Intent to Terminate* provided by Ms. Pena contained false accusations whereby Ms. Pena falsified that (1) Plaintiff alleged that she was sick and failed to report to work; (2) Plaintiff failed to report to her supervisor in

writing, within five business days, any criminal charges, or criminal convictions, excluding misdemeanor offenses punishable only by fine; and (3) Plaintiff inaccurately recorded her work hours.

21. While on intermittent FMLA for her disability, Defendant discriminated against and terminated Plaintiff from her employment even though Plaintiff had an excused leave of absence to obtain medical treatment for her disability.

22. Plaintiff seeks to recover damages stemming from the abovementioned discrimination.

**Presumption Based Upon Temporal Proximity**

23. The timing of Plaintiff's termination is incredibly suspect. It is well accepted in employment discrimination lawsuits, the unusually suggetive characteristic of temporal proximity has been regularly held to denote circumstantial evidence of a causal link. *Green v. Lowe's Home Ctr., Inc.*, 199 S.W.3d 514, 519 (Tex.App.-Houston [1st Dist.] 2006, pet. denied) (stating that temporal proximity between assertion of a protected right and termination may be evidence of a causal connection).

**VII. COUNT ONE - DISCRIMNATION ON THE BASIS OF DISABILITY IN VIOLATION OF CHAPTER 21 OF THE TEXAS LABOR CODE**

24. Plaintiff hereby adopts by preference each and every paragraph of the Facts and allegations stated in this Original Complaint as if fully and completely set forth herein.

25. TEX. LABOR CODE § 21.052 States that an employer commits unlawful employment action if, due to disability, the employer "limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an

individual of any employment opportunity or adversely affect in any other manner the status of an employee."

26.    Plaintiff is an employee within the meaning of the Texas Labor Code and belongs to a class protected under the statute, namely Plaintiff has a disability.

27.    At all times material to this lawsuit, Plaintiff had Multiple Sclerosis and Defendant was aware of Plaintiff's disability.

28.    To establish a case of disability discrimination, a Plaintiff must show that they: (1) have a disability; (2) they are qualified for the job; and (3) they have suffered an adverse employment decision because of the disability. *See Hagood v. County of El Paso*, 408 S.W. 3d 515, 523 (Tex. App. 2013).

29.    The Texas Labor Code defines disability as a mental or physical impairment that substantially limits at least one major life activity of that individual, a record of such impairment, or *being regarded* as having such an impairment. Tex. Lab. Code Ann. § 21.002(6).

30.    Plaintiff's Multiple Sclerosis in and of itself is a disability. To establish Plaintiff had an impairment "regarded as a disability," Plaintiff must show that a Defendant believed either than Plaintiff had a substantially limiting impairment that she did not have, or that she had a substantially limiting impairment when, in fact, the impairment was not so limiting. *See Morrison v. Pinkerton Inc.,* 7 S.W. 3d 851, 857 (Tex. App. 1999).

31.    It would be unconscionable to allow Defendant to treat Plaintiff's condition as a disability to detrimentally limit her employment while simultaneously denying Plaintiff has a

disability to shield themselves against the corresponding legal ramifications.

32.   As a direct result of her wrongful termination, Plaintiff lost substantial income and benefits. Because of her now tarnished employment record, Plaintiff's employment opportunities are limited and her career paths altered. Therefore, Plaintiff seeks damages for Defendant's engagement in wrongful termination.

## VIII. COUNT TWO -FAMILY MEDICAL LEAVE ACT ("FMLA") INTERFERENCE

33.   Plaintiff claims that she was entitled to time from work under the FMLA, and that Defendant interfered with, restrained, or denied her entitlement to that time off.

34.   It is unlawful for an employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided by the FMLA.

35.   FMLA rights include requesting or taking leave under the statute; having the employer maintain certain employment benefits during the leave; once leave is completed, being restored to the position the employee held when the leave began, or to a position that has equivalent employment benefits, pay, and other terms and conditions.

36.   An employee is eligible to take leave if, when the leave began, she:

   a.  had been employed by the employer for at least 12 months; and

   b.  worked at least 1,250 hours during the previous 12-month period.

37.   If eligible, an employee is entitled to take up to 12 weeks of leave in any 12-month period:

   a.   Because of the birth of the employee's child and to care for that child;

   b.   because of the placement of a child with the employee for adoption or foster care;

c.     to care for the employee's spouse, son, daughter, or parent, if that person had a "serious health condition"; because of a "serious health condition" that made the employee unable to perform the functions of her position; or

d.     because of any qualifying exigency arising out of the fact that the employee's spouse or a son, daughter, or parent is on covered active duty (or has been notified of an impending call or order to covered active duty) in the Armed Forces

38.     A "serious health condition" means an illness, injury, impairment, or physical or mental condition that involves either (a) inpatient care in a hospital, hospice, or residential medical care facility, or (b) continuing treatment by a health care provider.

39.     A "health care provider" includes a doctor of medicine, doctor of osteopathy, podiatrist, dentist, clinical psychologist, optometrist, nurse practitioner, nurse midwife, or clinical social worker, so long as the provider is licensed to practice in the state and is performing within the scope of his or her practice.

40.     A "qualifying exigency" arises when an employee's spouse, son, daughter, or parent is on covered active duty in the Armed Forces, or has been notified of an impending call or order to cover active duty. Categories of "qualifying exigencies" include short-notice deployment, military events and related activities, childcare and school activities, financial and legal arrangements, counseling, rest and recuperation, post-deployment activities, and additional activities.

41.     An employee is required to give notice to the employer indicating when [he/she] requires FMLA leave.

42. If the need for leave was foreseeable—that is, the leave was planned or expected—the employee must give the employer at least 30 days' notice before the leave was to begin, except that if the date of the treatment or birth required the leave to begin in less than 30 days, the employee was required to provide such notice as was practicable.

43. If the need for leave was *not* foreseeable—that is, the leave was unplanned or unexpected— the employee must give the employer notice as soon as was practicable under the facts and circumstances.

44. "As soon as practicable" generally means that an employee must give notice within the time prescribed by the employer's usual notice requirements for such leave. In extraordinary circumstances when it is not feasible for the employee to give such notice, someone such as a family member should do so.

45. To give her employer proper notice of the need for FMLA leave, an employee is *not* required to expressly refer to or name the FMLA. The employee need provide the employer only enough information to put it on *notice* that leave was needed because of a serious health condition, birth, et cetera.

### VIII. COUNT THERE-FAMILY MEDICAL LEAVE ACT ("FMLA") INTERFERENCE
#### Count Three – Family Medical Leave Act ("FMLA") Retaliation

46. To succeed in this case, Plaintiff must prove by a preponderance of the evidence that she was entitled to time off from work because:

(a) Plaintiff had a "serious health condition" that made her unable to perform the functions of her employment position,

11

47.     Here, Plaintiff requested leave from work because of her MS, to which the Defendant granted.

48.     Plaintiff gave Defendant proper notice of the need for time off from work for one or more of these reasons; and Defendant interfered with, restrained, or denied Plaintiff's entitlement to take time off from work. It does not matter whether Defendant intended to violate the FMLA. If Defendant denied Plaintiff a right to which she was entitled under the FMLA, then Plaintiff should receive a favorable finding upon this issue. *See Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999); *see also Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) (the plaintiff must have been harmed by violation).

49.     It is unlawful for an employer to retaliate against an employee for engaging in FMLA-protected activity.  FMLA-protected activity includes, but is not limited to, requesting or taking leave, having the employer maintain certain employment benefits during leave once leave is completed, seeking restoration to the position the employee held when leave began or to a position with equivalent employment benefits, pay, and other terms and conditions of employment.

50.     To prevail, Plaintiff must prove by a preponderance of the evidence that:

a.   she engaged in FMLA-protected activity;

b.   Defendant terminated employee for requesting to take part in the FMLA; and

c.     Defendant would not have terminated Plaintiff but for her engaging in FMLA-protected activity.

51.    Plaintiff *does not* have to prove that her FMLA-protected activity is the *only* reason Defendant terminated her.   But Plaintiff must prove that she would not have been terminated in the absence of her FMLA-protected activity. Even in the face of disbelief about the reason Defendant alleges for its decision, it may be inferred that Plaintiff's termination resulted from her FMLA-protected activity.

52.    Plaintiff claims that she would not have been terminated by Defendant but for her engaging in FMLA-protected activity.

53.    Defendant retaliated against Plaintiff for engaging in her right to use resources designed to deter unlawful employment actions under both State and Federal law.

54.    Furthermore, the laws enforced by EEOC, the Americans with Disabilities Act, as amended (ADAAA) also protects individuals from coercion, intimidation, threat, harassment, or interference in their exercise of their own rights or their encouragement of someone else's exercise of rights granted by the ADA.

## RESERVATION OF RIGHTS

55.    Plaintiff reserves the right to bring additional causes of action against the Defendant(s) and to amend the Complaint  as necessary.

## XII. JURY DEMAND

56.    Plaintiff demands a jury trial.

## XIII.  PRAYER FOR RELIEF

57.    **WHEREFORE, PREMISES CONSIDERED**, Plaintiff requests that Defendants be cited to appear and answer, and that upon trial of this cause, have judgment against

Defendant for:

(1)     all actual and economic damages suffered by Plaintiff,

(2)     reinstatement,

(3)     lost back pay,

(4)     lost front pay,

(5)     compensatory damages,

(6)     liquidated damages (per FMLA),

(7)     prejudgment and post-judgment interest at the legal rate,

(8)     costs of court,

(9)     attorney's fees,

(10)    all expert fees, as allowed by law,

(11)    and such other relief, both at law and in equity, deemed proper by this Court.

Respectfully submitted,

**LAW OFFICE OF AUDIA JONES, P.C.**

/s/ AUDIA JONES

_____

**AUDIA JONES**
SBOT #24066433
FID #3365076
Fax:   713.955.9036
audia@audiajones.com
2450 Louisiana Street, Suite 400 #506
Houston, Texas 77006
Tel.:   713.714.6519

ATTORNEY-IN-CHARGE
FOR PLAINTIFF

14